CHITTENDEN, JEHIEL ISHAM, *vs.* ISAAC HIGBEE and LEWIS HIGBEE, (in
July, Chancery.)
1829.

> A Court of Chancery will decree an injunction upon a deed from orator to B, fraudu-
> lent as to A, who is co-defendant with B, when all parties are before the Court, all
> the merits fully discussed, and all other remedies barred by the statute of limita-
> tions, though the orator is not so free from blame as to be entitled to a decree, were
> it not for these considerations.

The substance of the orator's bill of complaint, so far as it re-
lates to the points litigated and decided, was, That the orator receiv-
ed from *Isaac Higbee*, in the year 1819, a warranty deed of
about thirty acres of land, in the town of *St. George*, and gave
his notes for the same, amounting to $288 ; that, soon after this
conveyance, said *Isaac*, with the consent of the orator, commen-
ced an action of ejectment, in the name of the orator, against
*Lewis Higbee* for said land, on the trial of which *Lewis* recover-
ed a judgment, from which judgment *Isaac* appealed to the Su-
preme Court, but afterwards suffered a discontinuance in the ac-
tion ; that afterwards, in August, 1820, whether in pursuance of
any previous understanding or not, is unimportant in this action,
the orator and said *Isaac* rescinded their contract, that is, the or-
ator, by a quit-claim deed, conveyed back the land to said *Isaac*,
and *Isaac* delivered up to him his notes to be cancelled, and gave
him also a waggon worth ten or twelve dollars, said to be for the
orator's trouble in the business ; that *Isaac*, without procuring the
last deed to be recorded, immediately commenced an action of
ejectment in his own name against *Lewis* for this land ; that in

CHITTENDEN,
July,
1829.

Isham
vs.
Higbee et al.

November, 1820, *Lewis* applied to the orator for a quit-claim deed of the land, and offered to give him a cow for the same ; that the orator, being advised by one *Brown* that such a deed could be no injury to the orator, executed one, and received the cow ; that *Lewis,* being town clerk, forthwith recorded his deed ; That *Isaac's* deed from the orator was not recorded till the winter following, and a short time before the trial of said action in favor of *Isaac* against *Lewis ;* and that, on that trial, *Lewis* produced in evidence the deed from the orator, and thereby defeated the action ; that *Isaac,* instead of taking any appeal or review in said action, brought an action of covenant against the orator upon the covenant in said deed given him by the orator ; that *Isaac* recovered a judgment against the orator, in this action, and a review being entered, the action was yet pending before the Supreme Court. The bill prayed for a perpetual injuction upon said last action ; and also prayed that *Lewis* might be compelled to release to *Isaac,* and thereby save the orator harmless in the premises pursuant to his promise, which the bill alleged he made on receiving said quit-claim deed from the orator.

To induce this result, the orator further charged, in his bill, a combination between the two respondents to injure him in the premises ; that *Isaac* lodged his deed with *Lewis* for record in the town clerk's office, and afterwards took it back and let the deed to *Lewis* be first recorded ; also, that *Isaac* gave the orator no notice to attend and defeat *Lewis'* deed, on the trial of said action of ejectment ; that witnesses might have been produced, if such notice had been given the orator, to prove that *Lewis,* when he took his quit-claim deed, knew that the orator had before given a deed to *Isaac* of the same land, and that *Isaac* knew of the same witnesses ; and that *Isaac* refused, when requested by the orator, to let the orator use the name of *Isaac* in a petition for a new trial in said action of ejectment, after *Isaac* had commenced said action of covenant, and within the time allowed by law for presenting such petitions, though the orator offered to present and prosecute such petition at his own expense, and give ample security to *Isaac* to save him harmless from all costs in the same.

*Lewis Higbee* demurred to that part of the bill which charged a promise to indemnify the orator ; as he had his remedy at law. The respondents severally answered to the bill : their answers were traversed, and several witnesses were examined, and their testimony read by each party. *Lewis,* in his answer, acknowledged he knew of the deed to *Isaac* when he received his from the orator, but positively denied his having ever seen the deed, or its ever having been lodged with him for record. Both an-

CHITTENDEN,
July,
1829.

Isham
vs.
Higbee et al.
swers admitted that the several suits were brought and carried on and ended as charged.  *Isaac* answered that the deed to him was not left for record till the time when it was in fact recorded. He also denied any knowledge, at the time of the trial of his said action against *Lewis*, of witnesses to prove *Lewis'* knowledge of the deed to *Isaac*. He also denied his having then known that *Lewis* possessed such knowledge.  He admitted that the orator did give the deed to *Lewis*, but said it was done fraudulently to defeat the orator's deed to him, and that it was the sole means of defeating his action of ejectment brought against *Lewis*. He also admitted his refusal to let the orator use his name in a petition for a new trial, and assigned, as a reason, the fraud of the orator in giving said deed to *Lewis*, and *Isaac's* choice to collect the money of the orator rather than have the land.  Several witnesses testified to the declarations of *Lewis*, tending to show that the deed to *Isaac* was in his office for record, and unrecorded, when he procured the deed from the orator ; but there was no other kind of testimony to that fact.  Testimony upon other points is sufficiently noticed in arguments of counsel and opinion of the Court.

*C. Adams and Griswold, for the orator.*—From the facts in the case, it appears the orator is an illiterate, ignorant man, unable to read or write, and wholly incompetent to transact business of the kind mentioned in the bill.   It may fairly be inferred from the facts proved, that these two brothers have been in a controversy about the piece of land mentioned in the bill, and that they have combined to secure the land to one of them, while the other is to draw the value of the land from the orator.   The orator may have been very short-sighted in giving the second quit-claim to *Lewis Higbee* ; but it was done through ignorance, and not with any design to injure said *Isaac*.  It is very evident he has been the dupe of both the *Higbees*, and that they have attempted to practice upon his ignorance and credulity.   From an examination of the whole evidence the following propositions can be maintained :

The original sale by *Isaac* to the orator was to subserve some purpose of the said *Isaac*, and not intended for the benefit of the orator.

The quit-claim back again to *Isaac* was without any consideration, the orator having received nothing therefor, except the old waggon.

The judgment subsequently rendered in favor of *Lewis* against *Isaac*, must have been by the consent of *Isaac*.   It is impossible to examine the evidence on this point without coming to the conclu-

sion that *Isaac,* and probably *Lewis* too, was guilty of the most Chittenden, July, 1829.

Isham
vs.
Higbee et al. barefaced and shameful fraud. *Isaac* takes his quit claim on the 28th August, and on the 30th commences his ejectment against *Lewis.* It is hardly possible to suppose that this deed was not left for record : but still it is not recorded until February 1st, 1821, just before the judgment. On the 6th of November, 1820, *Lewis* persuades the orator to give him a quit-claim, with full knowledge that one had before been given to *Isaac.* This deed to *Lewis* was instantly recorded, and was a matter of public notoriety in that place ; and still it does not appear that *Isaac* ever exchanged a word with the orator relative to the subject, never gave him any notice of the suit, nor cited him to prosecute ; and when on the trial, the deed to *Lewis* was produced, and when it could have been shown in a moment that *Lewis* knew of the deed to *Isaac,* yet *Isaac* permits the judgment to remain without review or appeal, gives no notice of the fact to the orator, makes no inquiry of him as to the circumstances of the deed to *Lewis,* and afterwards refuses to permit his name to be used in a petition for a new trial. His conduct is wholly inconsistent with fair dealing, and cannot be explained on any other ground than that of the grossest fraud.

We contend, therefore, that the claim of *Isaac* against the orator, for any supposed covenants in the quit-claim deed, is unconscionable ; and that he ought to be perpetually enjoined with all cost. It is very doubtful whether there is any covenant arising from this deed which can legally charge the orator. It is contended there is an implied covenant : but whether there is or not, is not material ; for it is evident that this deed is wholly without consideration.

*Lewis* cannot, in good conscience, retain any title which he may have received by the quit-claim deed from the orator ; but equity will compel him to release it, if there is any one entitled to receive it. It appears by the testimony of two witnesses that the deed to *Isaac* was in *Lewis'* house at the time he took his quitclaim from the orator. An attempt is made to destroy this testimony ; but it is corrobrated by all the attending circumstances. If this fact is made out, *Lewis* was guilty of the highest fraud in suppressing the deed to *Isaac,* as well as in taking the quit-claim from the orator. There is enough without this to show that *Lewis* ought not to retain this title. It is admitted by his answer, that at the time he took the deed from the orator, he knew that a previous deed had been given to *Isaac.* This alone is sufficient to vitiate that title, and if the Court are satisfied that *Isaac* acted in good faith when he permitted the judgment to pass against him,

CHITTENDEN, or that he rested in the opinion that *Lewis* had obtained his deed
*July,*
1829.   without any knowledge of the previous deed,they will compel *Lew-*
Isham   *is* to release to *Isaac* all title acquired by said deed.   But if the
*vs.*
Higbee et al.   Court think with us, that *Isaac* and *Lewis* were both fraudulent,
they may say *potior est cnoditio defendentis :* but in either case,
the orator must be absolved from the claim of *Isaac.*   It is stated
in the bill that *Lewis* agreed with the orator to indemnify him
against any claim of *Isaac.*   This is denied by the answer, and tho
fact is not otherwise material than as it shows the means practised
by *Lewis* to obtain the deed.   Two of his own witnesses, howev-
er, state the fact directly, and not only so, but state other circum-
stances which corroborate the opinion that he must have seen the
deed.

From all which, we come to the conclusion, that though the or-
ator may have acted unadvisedly, he has conducted in good faith
towards *Isaac ;* that *Isaac* has no equitable claim upon the orator
for any supposed covenants in the deed ; that *Lewis* has no right
to retain the title against an honest claimant, and if *Isaac* had
been guilty of no fraud, this title may be decreed to him ; and in
either case, that *Isaac* ought to be perpetually enjoined from pros-
ecuting his claim on the covenants ; and that the orator recover
his cost and charges.

*Mr. Thompson, for the respondents.*—It is contended, in be-
half of *Isaac Higbee,* that there is not a material averment con-
tained in the bill against *him,* unless it be the alleged combination
and fraud between *Isaac & Lewis.*   Whether this be material
or not, it is wholly unsupported by proof.   There is not a fact or
circumstance proved which warrants the inference of a combina-
tion for *any* purpose ; much less to defraud the orator.   It is ob-
vious that *Lewis* was endeavouring to gain a legal advantage over
*Isaac,* and that tho orator joined him to accomplish the object,
and benefit himself.   But there is not a particle of proof to con-
vict *Isaac,* even if the declarations of *Lewis* were to be taken
against him.   But if the two defendants have combined, which
of the present parties was *first* in fault ?   With what grace can the
*orator* complain that *Isaac* has not used the means in his power to
save him from an injury which he has voluntarily and fraudulent-
ly brought upon himself.   There are other allegations which the
court may think require comment.

1. It is alleged that *Isaac* had nothing but a pretended title to
tho land at the time of his conveyance to the orator.—The proof
is, taking all the testimony together, that the land was in dispute
between *Issac* and *Lewis,* and that both claimed, and no third

person claimed title. The orator is the last man that ought to CHITTENDEN
July,
1829. question *Isaac's* title. Having taken a deed with covenants of
warranty from him, and redeeded to him *without* covenants, and Isham
vs.
Higbee et al. the deed to *Lewis* having, as appears, alone prevented a recovery
of the land by *Isaac*, the title of *Isaac* is of no consequence.
Had the orator seen fit to retain the land, and the title had failed,
he could have resorted to his covenants; but having chosen to re-
deed, no defect in the title can excuse him from the violation of his
covenants to *Isaac*.

2. It is alleged that the orator, being a weak man, was induced
by the advice of a magistrate and the importunities of *Lewis* to do
an act which has resulted in an injury to *Isaac;* and *Isaac* is
called upon to take upon himself the misfortunes of the orator,
because he through weakness has listened to unwholesome advice.
This will become an equitable claim when the doctrine shall have
been established that a foolish man may shift his misfortunes on to
his more discreet neighbor. But the evidence is that although
the orator, who alleges his folly as the foundation of an equitable
claim, has acted *unwisely*, he has nevertheless acted *understand-
ingly*, and has been careful to secure the rewards of his folly as
he proceeded. When he released to *Isaac*, he knew enough to
receive back the consideration, and to demand, in addition, prop-
erty to the amount of fifteen dollars. When he deeded to *Lewis*
he was shrewd enough to secure, for ought that appears, the al-
leged consideration in the deed, a cow, a promise of part of the
land, and an indemnity—as he claims against any injury that
might result to *him*—not to *Isaac*; and he was fool enough to de-
cline deeding until these requisites were complied with. It
ought moreover to be remembered that the orator's claim is pro-
fessedly an *equitable* claim. Now, he could not be so ignorant
of moral principles as not to be aware, that to deed the land to
*Lewis*, when he had previously deeded to *Isaac*, was, at least, *in-
equitable*.

3. The orator complains that he was not called upon to prose-
cute the suit of *Isaac* against *Lewis* to recover the land. Upon
this point *Isaac* contends that the evidence warrants the inference,
that the orator knew as much about that suit as he did, and much
more of the evidence which would have enabled him to recover.
A recovery was prevented by a foolish or fraudulent act of the orator;
and it is quite immaterial whether he might, or might not, have pre-
vented the consequences of that act upon *Isaac*. It is but a poor
excuse for one who has wantonly done his neighbor an injury, that
he could, upon request, have repaired it. The orator having
through the hope of gain violated his covenants, *Isaac* had a right

CHITTENDEN.
July,
1829.

Isham
vs.
Higbee et al.

to rely upon them, and was not bound to seek relief for the orator against the consequences of his own misdeeds. It is alleged also that *Isaac* had evidence in his power at the trial to defeat the operation of the deed to *Lewis*. But if the fact be so, it amounts to nothing, for he was under no legal or moral obligation whatever to defeat the deed. There is no proof that the deed to *Isaac* was left for record, and if there were, it may be repeated that *Isaac* was not bound to help the orator out of a difficulty in which he had voluntary involved himself.

4. It is alleged that the orator has made sundry very reasonable propositions for settlement, which *Isaac* has refused to accept. The defendant, *Isaac*, is not bound to accept such propositions, however reasonable they may appear to others. He conceives he is not bound to accede to offers of compromise until they shall have become a legal tender; and when this new era in chancery proceedings shall have arrived, he will rely upon the proposal, which he himself has made, in offset.

Thus far the argument has proceeded with more particular reference to *Isaac Higbee*. How does the case stand with *Lewis* ? So far as regards their liabilities, and the application of the evidence, they are as distinct as if there was a separate bill against each. The answer of the one cannot effect the other; neither can the evidence taken for or against one be used for or against the other. The claim against *Lewis* is founded upon the alleged incompetency of the orator, and the advantage taken of his weakness.

1. The evidence shows him to be an *illiterate*, but not a weak or incompetent man. His want of capacity is not to be inferred from his acts or proceedings, either with *Lewis* or *Isaac*. He has been cautious to guard against injuries to himself, but altogether careless of the rights and interests of *Isaac Higbee*. If under a mistake as to the legal operation of the deed upon himself, those about him were as much so. He could not be deceived as to the operation of the deed upon *Isaac;* for it was obviously the object of all to defeat his claim.

2. But weakness of intellect alone, unconnected with fraud, is no cause of relief *(1 Mad. Chan. 223)*—*Newland on contracts*, 362 : and there is no proof of fraud. The declarations of *Lewis* were founded upon the misrepresentations of the orator : and they were the same as those of *Mr. Brown*, who did not intend to deceive. There was no important fact concealed. All must have been aware that the deed to *Isaac* was not recorded. But if the orator were ignorant of that fact, a disclosure would not have prevented the execution of the deed to *Lewis*, because the whole object was

to defeat *Isaac's* claim. If any fraud was practised, it was upon *Isaac*, and both *Lewis* and the orator were engaged in it; and neither can call upon the other to protect him against the consequences of it. There is not proof that *Lewis* had neglected to record the deed to *Isaac*, or that it had ever been left for record. A voluntary conveyance will not be set aside unless obtained by fraud or imposition. 1 *Atk.* 401-2.—2 *Swift.* 45-60.

3. If any valid agreement was made, there is an adequate remedy at *law*. The complaint is, that by reason of the deed to *Lewis, Isaac* has prosecuted the orator, and the amount of his recovery, and the expenses of defending his suit, would be the rule of damages. If it be said, the remedy would be doubtful, because the contract of indemnity was not in writing, the answer is, that the same contract would be inoperative in equity.

HUTCHINSON, Chancellor, after stating the case, delivered the opinion of the Court.—The demurrer of *Lewis Higbee* to that part of this bill which charges a promise to indemnify the orator, is overruled. There might be a remedy at law, as urged by his counsel, but not a complete remedy. A complete remedy would include an injunction upon the title. Further, this is not charged as a substantive ground of relief, but only as a part of the inducement held out to the orator to give the deed, or convince him there was no danger to him in doing so.

There is great difficulty in doing perfect equity in this case, consistent with any rules of chancery proceedings. That the deed from the orator to *Lewis Higbee* was obtained in fraud of *Isaac Higbee*, and that with the full knowledge of said *Lewis*, we entertain no doubt. He confesses, in his answer, his knowledge of the deed from the orator to *Isaac*, which was defeated in its operation by his deed thus obtained. *Lewis* ought to derive no benefit whatever from this deed; yet *Isaac* is the person most directly injured by it, and he does not complain, but chooses to take his remedy upon the orator, in his suit at law. While we hear the complaint of the orator upon this subject, we, in the outset, are saluted with the rehearsal of his having given this deed which is the source of all his difficulty, and that when he must have known that *Lewis* wanted it to use against *Isaac*. Moreover, the bill, as against *Lewis*, is not very highly embellished with descriptions of the artifices of *Lewis* to deceive the orator, and make him believe that to be right, which was fraudulent and wrong. Had *Lewis*, under a pretence of purchasing a different piece of land, imposed upon the orator a description in the deed, which would cover the land in question, there would be no difficulty.

CHITTENDEN.
July,
1829.

Isham
vs.
Higbee et al.

The orator would appear the subject of delusion, and not be sus-pected of intentional fraud.

Again, were *Isaac Higbee* the complainant, and all the facts as they now appear, we should have no difficulty ; for the deed from the orator was *ipso facto* a fraud upon *Isaac*. Again, if there were clear, legal proof, as against *Isaac*, that his deed was lodged with *Lewis*, the town clerk, for record, and taken back, or laid aside, with the knowledge of *Isaac*, to give place for *Lewis'* deed upon the record, that would establish the whole claim of the orator. It would so establish the fraud of *Isaac* in perfecting the deed to *Lewis*, we might well enough presume him concerting with *Lewis* in its conception. But there is no testimony against *Isaac* upon this subject. The sayings of *Lewis* are good evidence against him, but are no more evidence against *Isaac* than if *Isaac* were not joined with *Lewis* in the bill. As to him it is mere hearsay tes-timony, and wholly inadmissible. There is no other testimony of a concert between them, which would render this admissible testimony. Indeed, it is resorted to as evidence of the connivance of the two, and, without it, the testimony upon that point does not appear very strong. It would seem difficult to infer a fraudulent connivance from that which a man had a right to do, though it may have weight with other circumstances. When the orator requested to use the name of *Isaac* in a petition for a new trial, his refusal might be evidence of such connivance, if no reasonable motive were assigned for such refusal. But *Isaac*, when he refused, assigned as a reason, that the orator had joined with *Lewis* in a successful fraud to deprive him of his land, and chooses to rely upon a supposed covenant in his quit-claim deed, rather than recover the land itself. He not only had a right to say this, and say it with some plausibility, but if he was sure of his remedy upon the orator on his covenants, and thought his land poorer property than the money, it would be natural for him to take that course. So when he found the deed from the orator to *Lewis* brought in to defeat his title, if he really believed that the orator had designedly given that deed to his injury, he might deem it useless to apply to the orator for a remedy to defeat said *Lewis'* deed. And surely the orator had no legal right to be vouched in by *Isaac* to defend against a deed of which the orator had better knowledge than *Isaac* could be supposed to have. Yet *Isaac* ought not to be too uncharitable. He ought, as a neighbor, to have been willing to hope, at least, there was some mistake in the business, and made that inquiry of the orator which might probably have ended the difficulty before the action of *Isaac* against *Lewis* was abandoned. It would, also, have been more

CHITTENDEN,
July,
1829.

Isham
vs.
Higbee et al.

congenial to moral feeling for *Isaac* to have permitted the orator to use his name in a petition for a new trial. For, if he had his remedy against the orator, it was hardly correct to punish him wholly, and let *Lewis* go off with the land, if the remedy against him was plain, or could be rendered so by the petition for a new trial, as the orator contends. Moreover, while the orator prays that *Lewis* may be decreed to quit his title to *Isaac*, the latter resists the bill, *in toto*. This he probably does to prevent its intended effect to enjoin his action of covenant broken. But, if *Lewis* should quit his title to *Isaac*, and he should receive the acquittance, it would not necessarily operate further than to mitigate the damages. This assurance of *Isaac*, that his remedy is good against the orator in that action, furnishes the only reason why he did not resort to the most effective course, whether by petition for a new trial, or by a bill in chancery, to get rid of the deed to *Lewis*.

But *Isaac* is not without difficulty in the course he pursues. His deed from the orator is before the Court. It is emphatically a quit-claim deed. To the *habendum*, to his heirs and assigns, &c. are added these words, " so that neither I, the said *Jehiel Isham*, nor any other person or persons in my name or behalf, shall, or will, hereafter claim or demand, any right or title to the premises aforesaid, or any part thereof ; but they and every of them, shall, by these presents, be forever barred." This is what is called a covenant, and that, upon which said action is brought ; and the breach assigned, as we understand, is the after-giving of the quit-claim deed to *Lewis*. This is no covenant at all against future conveyances : it is only a covenant that he has never so conveyed to any person, as to have that prior title arise, to the prejudice of the title now conveyed. The only remedy of *Isaac Higbee* would have been an action on the case against the orator, or against him and *Lewis*, for the fraud in executing the deed to *Lewis* ; or a bill in chancery to compel a release, &c. Probably both of these remedies are barred by the statute of limitations during the pendency of these suits ; so that *Isaac* has now no relief any where, unless we secure it to him in this suit, which he here defends.

Amidst these complicated difficulties, as the parties are all regularly before us, and have presented the merits of their claims *in extenso*, we are inclined to dispose of things in the way that best comports with those principles by which we must be governed. If we could clearly ascertain the fact, that the orator was the dupe of a deception palmed by *Lewis*, we should have no difficulty. And this does appear in his favour, that the magistrate who took the acknowledgment of the deed, and in whom it is not strange he

CHITTENDEN,
July,
1829.

Isham
vs.
Higbee et al.

should place some confidence, advised that the giving of the deed to *Lewis* could not injure the orator. It also appears that the orator was illiterate ; could neither read nor write ; and that he was not the most sagacious man for business ; and also, that he was most vehemently pressed by *Lewis* on the subject. But it does not appear that he was deceived by any misreading of the deed. He fully understood that he was deeding the same land he had before deeded to *Isaac,* and must have perceived that *Lewis* wanted it to strengthen his title against *Iaasc.* He also was warned by his son not to intermeddle, through fear he would get himself into difficulty. He knew what he was about too well to be protected by this court, and treated as wholly innocent in a matter so necessarily fraudulent as the giving of the second deed of the same land. It was giving *Lewis,* upon his assurances against injury to the orator, the implements which he afterwards used to the injury of *Isaac.* We consider that *Lewis* cannot equitably receive any benefit from his deed ; that the orator has conducted, at least, so incautiously, as to induce the difficulties for which a remedy is sought, and is entitled to recover no costs of *Isaac Higbee* ; that *Isaac* cannot be entitled to costs in his groundless action at law, nor any costs in this suit, of which he will receive the principal benefit.

We, therefore, decree that the said *Lewis Higbee,* his heirs and assigns, be forever enjoined against using said deed from the orator to him, and against using the said judgment he recovered against *Isaac Higbee,* in said action of ejectment, or the record thereof, as evidence in any court of law or equity, or making any use thereof for his or their benefit in any way whatever ; and, that the orator tax, against said *Lewis,* the appropriate cost of prosecuting this suit against him the said *Lewis* : That said action of covenant broken, in favor of said *Isaac* and against the orator, be discontinued without cost to either party, and said *Isaac,* his heirs and assigns be forever enjoined against any further prosecution of the same ; but that no cost be taxed by the orator against *Isaac,* or in favor of said *Isaac* against the orator.

*Griswold* and *Adams,* solicitors for orator.

*Thompson,* solicitor for respondents.